**CAMDEN MACHINE & TOOL, INC., Appellant,**

v.

**CASCADE COMPANY, a Partnership, Dyess, Jones & Loughry, and Ferree and Searcy, Inc., Appellees.**

**No. 2–92–263–CV.**

Court of Appeals of Texas, Fort Worth.

Dec. 23, 1993.

G. Roland Love, Mike F. Pipkin, McCauley, MacDonald, Love & Devin, Dallas, TX, for appellant.

Andrew D. Sims, Russell R. Barton, Harris, Finley & Bogle, P.C., H.S. Sparks, III, Law Offices of Harold S. Sparks, III, Warren W. Shipman, III, Cantey & Hanger, L.L.P., Fort Worth, for appellees.

Before HILL, C.J., and HICKS and FARRAR, JJ.

## OPINION

FARRAR, Justice.

Appellant, Camden Machine & Tool, Inc., plaintiff below, sued appellees, Cascade Company, Dyess, Jones & Loughry, and Ferree and Searcy, Inc., for deceptive trade practices, negligence, common law fraud, breach of warranty, and breach of contract. The trial court granted severance and summary judgment in favor of all appellees. Camden appeals by four points of error.

Appellant contends the trial court erred in 1) granting motions for summary judgment and severance for each appellee in that material issues of fact exist; 2) granting summary judgment for Cascade because Cascade failed to comply with the requirements of Civil Procedure Rule 166a(c); 3) abusing its discretion in failing to grant Camden's motion for continuance; and erred in 4) considering untimely replies by Dyess, Jones & Loughry and Ferree and Searcy to Camden's timely response to the motions for summary judgment.

We reverse in part and affirm in part.

The underlying dispute arose out of the purchase of an office warehouse, located in Haltom City, by Camden Machine & Tool, Inc. (Camden) from Cascade Company. The summary judgment evidence shows the building was listed for sale with Ferree and Searcy, Inc., and the listing agent was Chris Stewart. All discussions and negotiations were between Stewart and John A. Burgoyne, president and owner of Camden. The parties signed the purchase money contract, setting the purchase price at $135,000, November 14, 1990. Burgoyne agreed to take the property "as-is," and the contract provided a forty-five day inspection period. Burgoyne had the specific right to terminate the contract during this forty-five day period if he determined, *in his sole discretion,* that the building would be unsuitable to obtain an occupancy permit or was *too costly to repair.* He immediately inspected the air conditioning system and negotiated a price reduction of $2,500. Shortly after signing, Stewart purportedly disclosed to Burgoyne and the appraiser there was a crack in the foundation but represented the crack was of minor significance. Burgoyne disputes this and maintains the disclosure was not made until January 21, 1991.

On December 17, 1990, Dyess, Jones and Loughry delivered an appraisal. The appraisal contained a disclaimer which read:

> We do not assume any responsibility for hidden or unapparent conditions of the property, subsoil, or structures, or the correction of any defects now existing or that may develop in the future. The mechanical, electrical, and plumbing equipment, unless noted, are assumed to be in proper operating condition. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

The appraisal provided a general description of the building, stated it was in average

condition and valued the building at $140,000. It contained the following description:

> A physical inspection of the building indicated that the subject improvements were [sic] in average condition. The rain gutters are in need of repair in several places, and some of the exterior metal paneling has been damaged at the rear of the building. According to the current tenant, there have been roof leaks in the past which are repaired at present, and causing no damage. However, the dropped ceilings in the office and shop area show some water damage. The office carpet is worn and stretched. There is one crack in the concrete slab in the southwestern part of the building, but it does not appear to have caused any significant structural damage to the building. There are a few small trees growing against the side of the building, and some storage materials are piled on the east side of the building.

The appraisal failed however, to acknowledge the women's restroom had been gutted and was used as a storage room, an overhead door did not function because the tracks had been removed, and did not cite that wires of some sort were hanging free. Burgoyne says he was aware of these deficiencies but was unconcerned because he was using the appraisal only for the purpose of obtaining financing on the building. He didn't contact the appraiser to complain. Burgoyne stated he trusted the appraisal to point out defects so he could then consult an engineer. Burgoyne viewed the cracked foundation a day or two after receiving the appraisal. Shortly before closing, he brought in contractors for consultation. In his deposition, Burgoyne stated that during the final two weeks before closing, he was no longer relying on the appraisal's statements regarding the condition of the building including the condition of the foundation.

The survey was completed December 31, 1990, and revealed sanitary sewer and drainage easements under the west wall of the building. The building encroached approximately six to twelve inches into the easement. Burgoyne called the city and learned that easement gave the city the right to remove the western wall and foundation if required to gain access to the easement. He realized this would cause the building to collapse. However, he concluded this was a "theoretical" problem only.

Closing was originally scheduled for January 15, 1991 but was set back three times to allow Cascade additional time to vacate the property. On January 21, 1991, after Cascade vacated but before closing, Burgoyne was notified by the carpet installer that the floor would have to be leveled before any carpet could be installed. Burgoyne then discovered a two-inch crack that ran the length of building. Burgoyne contacted Stewart. Stewart represented the crack was cosmetic only, an engineer had inspected the crack in the past; the crack was from settling, and there was no serious problem. He provided the name of the engineer and suggested Burgoyne call him. Stewart informed Burgoyne that if he failed to close he would be in breach of contract and would lose his escrow deposit because the inspection contingency period had expired. It is undisputed that Stewart did not disclose the foundation had been repaired in 1985 when owned by a joint venture in which a Ferree and Searcy retirement fund was a partner. Burgoyne investigated the condition of the foundation by calling a friend, employed as a facilities engineer and licensed heating and plumbing contractor, and four concrete contractors, one of whom specialized in foundations. Bids to repair the crack ranged from $7500 to $16,000 depending on soil conditions. All required soil tests before giving a definite estimate. However, Burgoyne did not employ an engineer or obtain a soils report before closing because he did not want to incur this expense. Prior to closing he no longer believed there was no significant structural damage to the building because he saw evidence to the contrary. Burgoyne adjusted the repair allowance to $20,000 to 30,000 and attempted to negotiate a price reduction. Even though unsuccessful, he decided to close the transaction based on information provided by Stewart, those who bid on the foundation repair and knowing he had a "real bad problem."

On February 5, 1991, the parties closed the sale. After closing, the following occurred:

Burgoyne visited officials of Haltom City to inquire further regarding the easement; he received a letter on February 15, 1991 from Stewart disclosing the foundation had been repaired in 1985 at a cost of $6,250. Appellant employed an engineer and ordered a soils report in order to begin repairs on the crack. The soils report was produced in less than a week. It was at this time that Burgoyne discovered the storm drain beneath the crack, one-half of which extends outside the recorded easement, and the crack in the foundation was a complete break. He noticed for the first time wooden blocks had been inserted for support under the western wall, gaps existed between columns and beams, and connecting bolts had been loosened to accommodate the shifting. All these indicated to him the structural integrity of the building was compromised.

In his deposition, Burgoyne made the following admissions. He acknowledged he had the responsibility for determining whether the foundation problem was serious. He was aware of the severity of the crack prior to closing. Prior to closing, he had contractors and a facilities engineer inspect the crack and they reported a major settling crack. He knew the cost to repair the foundation would be approximately $12,000 to $15,000 and could run as high as $30,000 but he decided to "bite the bullet" and absorb the cost. He budgeted for the repairs because the building "frankly was in poor condition, but we bought it at a reasonably low price." Burgoyne realized he could have avoided closing by simply refusing to extend the closing date when seller was unable to vacate, but he wanted the building. As of the date of his deposition, December 9, 1991, he still wanted the building even after knowing its condition.

On October 9, 1991, Camden (Burgoyne) brought suit against each appellee under the Deceptive Trade Practices Act. TEX.BUS. & COM.CODE ANN. §§ 17.46, 17.50 (Vernon 1987 & Supp.1994). In addition, Camden sued Cascade for breach of contract, breach of warranty, and sought recision; Ferree and Searcy Inc. for common law fraud and statutory fraud; and Dyess, Jones & Loughry for breach of contract and negligence. Two oth-er defendants, Haltom City and Area Surveying Co., were also named in the suit. Cascade, Ferree and Searcy, Inc. and Dyess, Jones and Loughry each moved for summary judgment and severance, and their motions were set for hearing June 19, 1992. In response, Camden moved for continuance to obtain deposition testimony to pursue further discovery. The trial court denied appellant's motion for continuance and granted summary judgment and severance for each appellee.

In his third point of error, appellant contends the trial court erred in failing to grant his Motion for Continuance of Summary Judgment Hearing filed on the eve of the summary judgment hearing. However, appellant failed to obtain a written ruling on his motion and has failed to preserve any error. TEX.R.APP.P. 52. Accordingly appellant has waived any error.

We will address appellant's other points of error as they apply to each appellee.

## CASCADE COMPANY

■ In his second point of error, appellant contends the trial court erred in granting summary judgment for Cascade because Cascade failed to comply with Rule 166a(c). TEX.R.CIV.P. 166a(c). Specifically, appellant contends Cascade should have explicitly stated in the motion the grounds upon which it relied and should not have been allowed to incorporate by reference the grounds asserted by the Ferree and Searcy, Inc. and Dyess, Jones and Loughry motions. *McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337 (Tex.1993); *Inwood Forest, Com. Improvement Assn., v. R.J.S. Development Co.*, 630 S.W.2d 751, 753 (Tex.App.—Houston [1st Dist.] 1982, no writ). Rule 166a(c) provides in part:

> The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.

TEX.R.CIV.P. 166a(c). The purpose of the requirement is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment. *Westchester*

*Fire Ins. Co. v. Alvarez,* 576 S.W.2d 771, 772 (Tex.1978).

In its motion for summary judgment, Cascade cited Rule 58 and incorporated by reference the grounds stated in Ferree and Searcy's motion for summary judgment. TEX.R.CIV.P. 58. Appellant objected in his response, stating Cascade had failed to set forth the grounds and evidence sufficient to negate any element of any cause of action alleged. Cascade contends appellant did not preserve error because he failed to obtain a ruling on the objection from the trial court. In certain situations, this burden exists. *McConnell,* 858 S.W.2d at 343. However, the *McConnell* court has made clear summary judgments must stand or fall on their own merits. *Id.* at 342–43. The motion itself must assert grounds and establish its entitlement to summary judgment. *Id. citing City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). Even if the non-movant fails to except, respond or, as in this case, fails to obtain a ruling, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law. *McConnell,* 858 S.W.2d at 342–43.

Cascade's motion for summary judgment incorporated by reference the motions presented by Ferree and Searcy, and Dyess, Jones and Loughry, and stated, in addition, the cause of action arose solely from dealings between appellant and Searcy and Ferree, and no partner ever met with appellant or had any knowledge about his complaint. We conclude the motion failed to present sufficient grounds as a matter of law to support the summary judgment. Accordingly, we remand the cause of action to the trial court.

## FERREE AND SEARCY, INC.

Appellant asserts generally in his first point of error that the trial court erred in granting summary judgment in favor of Ferree and Searcy. Appellant also contends the trial court erred in failing to sustain numerous hearsay objections raised in his response to Ferree and Searcy's motion. Appellant, however, failed to obtain a written ruling from the trial court and also failed to

object to a lack of a ruling. Accordingly, these objections are waived. TEX.R.APP.P. 52. We further conclude no genuine issue of material fact exists regarding appellant's fraud and DTPA claims.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing there exists no genuine issue of material fact and he is entitled to judgment as a matter of law. *Clear Creek,* 589 S.W.2d at 678; TEX.R.CIV.P. 166a. All doubts regarding existence of a genuine issue of material fact are resolved in favor of the non-movant. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). However, summary judgment will be sustained if the movant negates as a matter of law one element in each of the non-movant's causes of action. *See Clear Creek,* 589 S.W.2d at 678–79.

In the instant case, appellant contends the trial court erred in granting summary judgment in favor of Ferree and Searcy regarding its DTPA and fraud claims. We will examine the fraud claim first. Camden maintains the trial court erred in failing to recognize genuine issues of material fact exist regarding Camden's fraud action against Ferree and Searcy. The elements of fraud are set out in *J.L. Williams & Co. v. Robert E. McKee, Inc.,* 612 S.W.2d 649, 651 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.):

> The elements of actionable fraud are: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false *or* made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Stone v. Lawyers Title Insurance Corporation,* 554 S.W.2d 183 (Tex.1977); *Custom Leasing Inc. v. Texas Bank and Trust Company of Dallas,* 516 S.W.2d 138 (Tex.1974); *Oilwell Division, United States Steel Corporation v. Fryer,* 493 S.W.2d 487 (Tex.1973).

*Id.*

Appellant contends he relied on statements made by Stewart, and these

statements were reckless. Ferree and Searcy contend they negated two of the elements of fraud by showing 1) the statements made were true and 2) appellant did not rely on them as a matter of law because he relied on his own investigation. The summary judgment evidence shows Stewart's representations concerning the cracked slab were not true. Later investigation established the crack was a serious structural flaw. In addition, we conclude as a matter of law that Stewart was reckless in making his representation based on a five-year-old engineer's report. However, when a person makes his own investigation of the facts, and knows the representations are false, he cannot, as a matter of law, be said to have relied upon the misrepresentations of another. *See Laughlin v. Federal Deposit Ins. Corp.,* 657 S.W.2d 477, 483 (Tex.App.—Tyler 1983, no writ). *Kolb v. Texas Emp. Ins. Ass'n,* 585 S.W.2d 870, 872 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). A review of the evidence shows that appellant made his own investigation by bringing in several contractors and a facilities engineer to give him opinions and estimates. He knew the problem was serious, contrary to Stewart's representation. We therefore hold Ferree and Searcy has negated an element of appellant's cause of action and affirm the trial court's summary judgment regarding fraud.

As respects the DTPA, appellant contends Stewart affirmatively misrepresented the nature of the crack and failed to disclose the prior repair. He also claims Ferree and Searcy, Inc. failed to prove as a matter of law Stewart's affirmative misrepresentations and failure to disclose were not a producing cause of his damages.

Ferree and Searcy, Inc. maintains no cause of action exists because the statements were true and even if not, the producing cause of damages was appellant's independent inspections and decisions. Stewart acknowledges he stated: the crack had always existed; was cosmetic; an engineer had inspected the crack, and it was not a serious problem; and these statements are supported by a letter written by the engineer dated five years before the sale.

The DTPA provides recovery for false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. TEX.BUS. & COM.CODE ANN. § 17.46(a) (Vernon 1987). This includes the failure to disclose information concerning goods or services, which was known at the time of the transaction, if such failure to disclose was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. TEX.BUS. & COM.CODE ANN. § 17.-46(b)(23) (Vernon Supp.1994). In order to recover damages for any deceptive act or practice, it is necessary to prove the conduct was a producing cause. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). Producing cause is an efficient, exciting or contributing cause, which in the natural sequence, produced injuries or damages. *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). There may be more than one producing cause. *Id.* Neither reliance nor foreseeability are required. *Allied Towing Service v. Mitchell,* 833 S.W.2d 577, 585 (Tex.App.—Dallas 1992, no writ). The DTPA has done away with many of the common law defenses which precluded recovery for fraud. *Weitzel,* 691 S.W.2d at 600. *See also Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 724 (Tex.1990). However some causal connection must be shown between the deceptive act and actual damages suffered. *Weitzel,* 691 S.W.2d at 602–03 (Gonzalez, J., dissenting); *Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex. App.—Dallas 1988, no writ). If the misrepresentation did not induce the consumer to enter into the contract, there can be no recovery. *Id.*

Central to our consideration is the agents's affirmative duty to be certain that his affirmative statements are true. When a seller makes an affirmative representation, the law imposes a duty to know whether that statement is true. *First Title Co. of Waco v. Garrett,* 860 S.W.2d 74, 76 (Tex.1993) *citing Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982). A seller and his agent are liable under the DTPA for affirmative misrepresentations, notwithstanding the agent's lack of knowledge or notice of falsity. *Henry S. Miller Co. v. Bynum,* 797 S.W.2d 51, 55

(Tex.App.—Houston [1st Dist.] 1990), *aff'd,* 836 S.W.2d 160 (Tex.1992). One can be held liable for facts he does not know because the element of scienter need not be proved under the DTPA. *Id. See also, Weitzel,* 691 S.W.2d at 600.

In the seminal case on DTPA arising out of real estate transactions, The Texas Supreme Court held proof a misrepresentation was made and the misrepresentation was a producing cause of actual damages suffered is sufficient to maintain a DTPA action. *Weitzel,* 691 S.W.2d at 600. In *Weitzel,* the plaintiffs signed a contract to purchase a remodeled home. *Id.* at 599. The contract provided for inspections and contained a contingency stating the Weitzels could require the seller to pay up to $1,000 in repairs or reject the contract. *Id.* The Weitzels did not inspect the house but instead were induced to accept by seller's oral representations. *Id.* When they found the plumbing and air conditioning equipment did not function properly, they brought DTPA action. *Id.* The Texas Supreme Court affirmed the trial court's judgment based solely on findings that the representations were made, and the systems did not function. *Id.* The court held the DTPA does not require proof of intent to deceive, trickery, artifice or device and explained the legislature had rejected reliance as an element for recovery. *Id.* at 600. The "operative words" of the statute are "producing cause." *Id.*

Appellants rely on *O'Hern v. Hogard,* 841 S.W.2d 135 (Tex.App.—Houston [14th Dist.] 1992, no writ). In *O'Hern,* the sellers and their agent failed to disclose foundation settling prior to closing, and the buyer learned of the defect when he inspected the property before closing. *Id.* at 136. The buyer did not rely on the listing agent's representations. Rather, he relied on the advice, expertise and judgment of his real estate agent and inspector. *Id.* The *O'Hern* court concluded that reliance on an independent inspection was not, in and of itself, enough to constitute a new and independent basis for the purchase of the dwelling and did not intervene and supersede any misrepresentations or nondisclosure of the sellers. *Id.* at 138. In addition, there was no summary judgment evidence showing the buyers would not have purchased the house if the structural defects had been disclosed. *Id.* at 137.

Ferree and Searcy rely on a Dallas Court of Appeals case bearing nearly identical facts to the instant case. *Dubow,* 746 S.W.2d at 857. In *Dubow,* the buyer entered into a contract for the purchase of a house. *Id.* at 858. The sellers misrepresented the condition of the house; however, it was readily apparent the house was in poor repair. The buyer employed an inspector who discovered foundation problems. *Id.* at 858. The Dubows hired a foundation specialist and obtained a repair estimate of $4,000. *Id.* at 859. The Dubows considered terminating the contract but instead negotiated a price reduction of $17,500. The contract was modified, and the Dubows acknowledged defects existed which would require extensive maintenance in the future and agreed to take the home as-is. *Id.*

In granting summary judgment in favor of the sellers, the court held the producing cause was appellant's reliance on the inspection and professional opinions which constituted a new and independent basis for the purchase. *Id.* at 860. These intervened and superseded the seller's alleged wrongful acts and were the sole efficient cause of the Dubow's actual damages. *Id.* at 860. "[I]t is obvious that the Dubows did not rely on any alleged misrepresentations or failures to disclose since the Dubows hired experts of their own to inspect the house, and they relied on these experts in negotiating and obtaining a contract modification affording them a reduced purchase price." *Id.* The court concluded even if the original contract and "as-is" modification were obtained in violation of section 17.46, the summary judgment proof established as a matter of law no genuine issue of fact existed as to the essential element of producing cause. *Id.* at 861.

■ The summary judgment evidence shows prior to closing Burgoyne knew the foundation had suffered major settling. He had estimated his cost to repair to range from $12,000 to $30,000, depending on soil conditions. He attempted to negotiate a price reduction and, when unsuccessful, he decided to absorb this cost. He had ade-

quate time to obtain a soils report before closing and elected not to do so because he did not want to incur the expense. Most importantly, even after all facts were known ten months after closing, Burgoyne still wanted the building. This establishes he would have closed the transaction had he known of the prior repair. Therefore, no material fact issues exist regarding producing cause, and we affirm the trial court's judgment.

## DYESS, JONES AND LOUGHRY

 Appellant asserts in his first point of error that the trial court erred in granting summary judgment in favor of Dyess, Jones and Loughry because material fact issues exist regarding its claim under breach of contract, negligence, and DTPA theories. The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). *See also Great American R. Ins. Co.*, 391 S.W.2d at 46–47. Summary judgment will be sustained if the movant negates as a matter of law one element in each of the non-movant's causes of action. *See Clear Creek*, 589 S.W.2d at 678–79. The movant is not required to negate all possible issues of law and fact that could be raised by the non-movant but were not. *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex.1985); *Clear Creek*, 589 S.W.2d at 678–79.

Appellant intertwines breach of contract with negligence, asserting one may breach his contract by negligent performance of the contract. *Montgomery Ward Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947). Appellant contends material issues of fact exist regarding the value of the property at the time of the appraisal, the completeness of appraisal, whether Dyess, Jones and Loughry affirmatively assumed a duty to act and breached that duty.

 The common law doctrine of negligence consists of three elements: a legal duty owed by one person to another; a breach of that duty; damages proximately result from that breach. *Greater Houston*

*Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The summary judgment evidence shows that Dyess, Jones and Loughry had a duty to perform the appraisal with reasonable care. Assuming without deciding there were errors and omissions in the description and its structural integrity of the building, we conclude the causal connection between these statements and appellant's damages does not exist for the following reasons. Burgoyne acknowledged that the appraisal report did not attempt to give any report on the structural integrity of the building and did not attempt to state whether the foundation or the roof or the walls were in good or bad condition. He did not expect the appraisers to be structural experts, and one would have to consult either engineers or contractors to determine structural issues. Burgoyne admitted he was aware of deficiencies concerning representations concerning the ladies restroom, hanging wires and non-functioning overhead doors at the time he received the report, but was unconcerned and never complained. Further, the appraisal alerted Burgoyne to the existence of the crack in mid December, and Burgoyne postponed a thorough investigation for more than thirty days. He admitted it was his responsibility to determine whether the foundation defect was serious. In addition, Burgoyne admitted that prior to closing he was aware of the severity of the crack, knew the cost to repair it, and elected to close anyway. He further admitted he no longer relied on any representations contained in the appraisal concerning the condition of the foundation. In addition, Burgoyne admitted there was no agreement or discussion between the appraiser and himself in which Dyess, Jones and Loughry agreed to inspect the building. Such an agreement would have been illegal because Texas law requires real estate inspectors to be licensed. Tex.Rev.Civ.Stat. Ann. art. 6573a § 23(c) (Vernon 1994). Dyess, Jones and Loughry is not a licensed real estate inspector, and Burgoyne acknowledged they never represented themselves as such. In fact, the appraisal itself made an express disclaimer that the appraisers "do not assume any responsibility for hidden or unapparent conditions of the property ... or structures." It is readily apparent from

reading the appraisal report, which is nearly one hundred pages in length, that the appraisers were not attempting to render an opinion or give any engineering report as to the structural condition of the building.

Further, Burgoyne admits to having certain expectations and making assumptions. These include assuming that Dyess, Jones and Loughry would do an inspection and report on the perceived structural condition of the building; however, he never discussed these expectations with Dyess, Jones and Loughry and never reached an express understanding that the appraiser would perform a real. estate inspection.

■■■ In regard to appellant's DTPA claim against the appraiser, we conclude the summary judgment evidence negates the assertion that any supposed affirmative misrepresentations was a producing cause of appellant's damages. Prior to closing appellant knew he had a major settling crack and he admitted he no longer relied on the appraisal, having obtained opinions from other experts. He admitted he knew the appraisal did not attempt to report on the structural integrity of the building. Prior to closing, he knew the cost to repair the foundation and elected to close anyway. We conclude Burgoyne's investigation and decisions to go forward with the transaction were the producing cause of his financial loss, not the appraisal or any reliance he may have at one time placed on the appraisal. *See Dubow,* 746 S.W.2d at 861.

■■■ In his fourth point of error, appellant contends the trial court erred in considering letter briefs, filed after the hearing, asserting they were untimely. Appellant correctly contends the trial court can only consider the record properly before it when the motion for summary judgment is heard. *Marek Equipment Co. v. Tomoco Equipment, Co.,* 738 S.W.2d 710, 712 (Tex.App.—Houston [14th Dist.] 1987, no writ). However, appellant mischaracterizes the letter brief as introducing new evidence or legal argument. It did not; it merely called the court's attention to facts already contained in the record. It is clear the trial court did not abuse its discretion in considering the letter brief, if it did in fact do so. In any event,

appellant has again waived error in failing to obtain a written ruling on his objection. TEX. R.APP.P. 52. After considering all points raised by appellant, we affirm the trial court's summary judgment in favor of Dyess, Jones and Loughry.

To conclude, we reverse the trial court's summary judgment in favor of Cascade Company and remand for further consideration. We affirm the trial court's judgment in favor of Ferree and Searcy, Inc. and Dyess, Jones and Loughry.