

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00777-CV

**MIRAMAR DEVELOPMENT CORP.** and John Hawkins,
Appellants

v.

Aaron M. **SISK**,
Appellee

From the 236th Judicial District Court, Tarrant County, Texas
Trial Court No. 236-248030-10
The Honorable Thomas Wilson Lowe III, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  April 23, 2014

AFFIRMED

This appeal arises from a lawsuit between the buyer and seller of a home.  The buyer, Aaron Sisk, sued Miramar Development Corporation and its president, John Hawkins (the Sellers), before subsequently nonsuiting his claims without prejudice.  On competing motions for summary judgment, the trial court determined the Sellers were not "prevailing" parties and thus not entitled to an award of attorney's fees.  On appeal, the Sellers contend: (1) the trial court erred in determining that the Sellers were not "prevailing" parties; and (2) the trial court's sanctions orders were invalid because they were signed by a visiting judge.  We affirm the trial court's judgment.

**BACKGROUND**

On April 9, 2010, Sisk and the Sellers executed a standard contract, promulgated by the Texas Real Estate Commission, for the sale of a residential property in Fort Worth, Texas. Section 17 of the contract provided that: "[a] Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding." In Section 7 of the contract, Sisk agreed to "accept[] the property in its present condition." The Sellers provided a Seller's Disclosure to Sisk. In Section 2 of the Disclosure, the Sellers indicated they were aware of defects or malfunctions in the home's foundation or slab and noted that a foundation repair was completed in 2008 by GL Hunt Company. The Sellers did not, however, indicate any defects or needed repairs with the plumbing system and indicated in Section 3 of the Disclosure that they were not aware of "previous foundation repairs" or "improper drainage."

Sisk arranged for an independent inspection of the home, and the inspector provided Sisk with a report. In his report, the inspector stated: "There is evidence of foundation repair. It is recommended that the client determine if the foundation repair is under warranty and if so, is the warranty transferrable." The inspector also stated in his report: "The client should also be aware that foundation repair may adversely affect the sewer and plumbing supply lines causing possible leaks," and "[t]he sink in the master bathroom was observed to drain slowly, suggesting that an obstruction may exist." Immediately upon moving into the house, Sisk encountered severe water drainage problems throughout the home. The sink that was observed draining slowly did not drain at all. Sisk discovered two "breaks" in the drain plumbing encased within the foundation, requiring repairs which totaled nearly $20,000.

On September 10, 2010, Sisk filed suit against the Sellers and the home inspector alleging the plumbing problems were caused, in part, by the foundation defects, and claiming violations of

the DTPA, common law fraud, common law fraudulent inducement, fraud by nondisclosure, statutory fraud in a real estate transaction, negligent misrepresentation, breach of express warranty, and negligence. Sisk alleged that the Sellers concealed known defects with the plumbing system when they disregarded problems reported by their plumber. Further, Sisk alleged the Sellers concealed that they had inadequately repaired the foundation because the Sellers did not install as many foundation piers as was recommended by GL Hunt.

The Sellers, proceeding *pro se*, answered with a general denial. Sisk filed a motion to compel discovery after the Sellers failed to respond to Sisk's requests for disclosure and interrogatories. The trial court entered an order compelling discovery on March 24, 2011. The Sellers did not comply with the order, and the trial court ordered sanctions totaling $4,000 against the Sellers in the form of attorney's fees. On September 29, 2011, Sisk served the Sellers with Requests for Admission. The Sellers did not respond. On April 4, 2012, Sisk amended his petition to add the Sellers' real estate agent and broker and eventually reached a settlement agreement with all defendants except the Sellers, who did not participate in mediation. On January 25, 2013, Sisk filed a second amended petition, proceeding against only the Sellers. On March 8, 2013, Sisk filed a motion for summary judgment on the merits of his claims based on the Sellers' deemed admissions from 2011.

The Sellers retained counsel for the first time on March 19, 2013 and filed a motion to strike the deemed admissions, which the trial court denied. The Sellers then filed their "Original Counterclaim and Supplemental Answer." In their supplemental answer, the Sellers asserted twenty-four affirmative defenses. The sole basis for the counterclaim was a request for attorney's fees under the DTPA, Texas Practice and Remedies Code, and Section 17 of the contract. On April 4, 2013, the Sellers responded to Sisk's motion for summary judgment and also asserted traditional and no-evidence motions for summary judgment, citing the recently-issued *Volmich v.*

*Neiman* case from the Fort Worth Court of Appeals. On April 9, 2013, Sisk nonsuited his claims against the Sellers, "[b]ecause of the increasing expense of litigation, and in light of [*Volmich*]."

Thereafter, both Sisk and the Sellers filed competing motions for summary judgment regarding the Sellers' status as a prevailing party under Section 17 of the contract. After a hearing, the trial court granted Sisk's traditional and no-evidence motions for summary judgment, and denied the Sellers' traditional motion for summary judgment. The Sellers appealed.

## ATTORNEY'S FEES

### A. Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). The movant must conclusively negate at least one essential element of the plaintiff's cause of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex 2004). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000).

A movant for a no-evidence motion for summary judgment asserts that no evidence exists as to one or more elements of a claim on which the non-movant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The burden is on the non-movant to present "more than a scintilla of probative evidence to raise a genuine issue of material fact" to defeat summary judgment. *Smith*

*v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

A. *The Law on Prevailing Parties*

The Sellers contend the trial court erred when it granted summary judgment in favor of Sisk on the prevailing party issue. The sole issue presented to the trial court in the competing motions was whether the Sellers were prevailing parties and therefore entitled to attorney's fees under Section 17 of the contract.

Under the American Rule, attorney's fees are recoverable only if authorized by statute or by contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). If authorized by contract, the parties may agree on the standard that will govern the attorney's fee award, even if that standard conflicts with Chapter 38 of the Texas Practice and Remedies Code. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). If the contract provides that attorney's fees will be awarded to the prevailing party, the trial court must determine which party is "prevailing." To prevail, a party "must obtain actual and meaningful relief, something that materially alters the parties' legal relationship." *Id.* at 652 (citing *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). More simply, a party prevails when it "prevails upon the court to award it something, either monetary or equitable." *Id.* at 655.

In *Epps v. Fowler*, 351 S.W.3d 862, 869 (Tex. 2011), the Texas Supreme Court construed an attorney's fee provision in a standard real estate contract to determine whether a defendant is a prevailing party when the plaintiff properly nonsuits his claims. Guided by the Fifth Circuit's decision in *Dean v. Riser*, 240 F.3d 505 (5th Cir. 2001), the Court held that when a plaintiff

nonsuits the claims in his lawsuit *with* prejudice, the defendant is considered the prevailing party because the plaintiff is barred by *res judicata* from re-asserting the same claims. *Epps*, 351 S.W.3d at 869.

When the plaintiff nonsuits his claims *without* prejudice, however, the Court refused to adopt such a *per se* approach. *Id.* at 869. The Court noted that a defendant would generally not be a prevailing party when the plaintiff nonsuits without prejudice because the nonsuit "works no such change in the parties' legal relationship; typically, the plaintiff remains free to re-file the same claims seeking the same relief." *Id.* The Court also observed, however, that "it is logical to conclude that the parties intended to award attorney's fees to compensate the defendant when the plaintiff knowingly pursues a baseless action," *id.* at 869, and to "'discourage the litigation of frivolous, unreasonable, or groundless claims' when a 'calculating plaintiff . . . voluntarily withdraws his complaint' to escape a disfavorable judicial determination on the merits." *Id.* (quoting *Riser*, 240 F.3d at 510) (citations omitted). Accordingly, the Court held a defendant may be a prevailing party only "if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." *Id.* at 870.

The *Epps* Court provided some guidance to trial courts when determining whether a nonsuit was taken to avoid an unfavorable ruling on the merits. A trial court "should rely as far as possible on the existing records and affidavits, and resort to live testimony only in rare instances." *Id.* Looking to federal case law, the Court identified the following factors which could support such a determination, including: (1) the timing of a plaintiff's nonsuit when filed only after the defendant files a potentially dispositive motion such as a motion for summary judgment; (2) a plaintiff's unexcused failure to respond to requests for admission or other discovery that could support entry of an adverse judgment; (3) a plaintiff's failure to timely identify experts or other critical witnesses;

and (4) the existence of other procedural obstacles, such as the plaintiff's inability to join necessary parties. *Id.* at 871.

Implied in each of these factors is that the plaintiff's nonsuit was necessary to avoid an unfavorable ruling because the plaintiff's claims were weak or without merit. Indeed, the *Epps* Court explained that the purpose of the rule was to discourage the plaintiff from pursuing weak claims that should be abandoned and not to penalize a plaintiff for nonsuiting when that is "precisely what should be done". *Id.* at 869 (citing *Riser*, 240 F.3d at 510). For instance, a plaintiff who nonsuits only after "discovery reveals previously unknown flaws in the plaintiff's claims" likely has not done so to avoid an unfavorable ruling on the merits. Rather, the decision "may well reflect a legitimate litigation strategy that 'reveals nothing about the merits of a plaintiff's case [and thus] does not warrant a conclusion that a defendant in such a case has prevailed . . . .'" *Id.* at 868 (quoting *Riser*, 240 F.3d at 510). Accordingly, the *Epps* Court held that "evidence that the suit was not without merit when filed may indicate that the defendant has not prevailed and is therefore not entitled to attorney's fees." *Id.* at 871.

### B. The Parties' Arguments

The Sellers argue that Sisk nonsuited to avoid an unfavorable ruling because he filed the nonsuit shortly after the Sellers filed their Counterclaim and Supplemental Answer and after the Sellers filed a motion for summary judgment. The Sellers argue the counterclaim first apprised Sisk of the attorney's fee provision in the contract and the Supplemental Answer first apprised Sisk of the Sellers' affirmative defenses. Additionally, the Sellers contend the *Volmich* decision, released on March 14, 2013, effectively barred Sisk's claims, and that Sisk judicially admitted as much when he mentioned *Volmich* in his notice of nonsuit. Notwithstanding *Volmich*, the Sellers argue that Sisk's claims were without merit because of the existence of the Sellers' affirmative

defenses. The Sellers contend that these facts support an inference that Sisk's nonsuit was filed to avoid an unfavorable judgment on the merits.

Sisk contends that he did not nonsuit to avoid an unfavorable summary judgment. Rather, he contends that he nonsuited in order to avoid the "extensive and expensive" briefing that would be required to respond to the Sellers' traditional and no-evidence motions for summary judgment on the merits. Further, Sisk argues that he would have prevailed on the merits because of the deemed admissions in his favor. Sisk also argues, on appeal, that the nonsuit was motivated by his desire to avoid a "settlement credit or possibly a proportionate reduction in Sisk's recovery" based on his prior settlement with the other defendants.

### C. Analysis

#### 1. Change or Clarification in the Law

The Sellers contend that Sisk nonsuited to avoid an unfavorable judgment after learning of the issuance of *Volmich v. Neiman*, No. 02-12-00050-CV, 2013 WL 978770, at*1 (Tex. App.—Fort Worth Mar. 14, 2013, no pet.) (mem. op.). *Volmich* was issued several years after Sisk commenced this lawsuit but less than a month before he nonsuited. *Volmich* involved a home buyer and home seller who executed a standard TREC contract containing a provision that the buyer was accepting the property "in its present condition." Prior to closing, the buyer arranged for an independent inspection, which revealed evidence of prior roof leaks. Two years after closing on the house, the buyer sued the seller for fraudulent inducement and DTPA violations because of a leaky roof. The trial court granted summary judgment in favor of the seller and the buyer appealed.

The issue before the court of appeals was "whether a boiler-plate 'as-is' clause supersedes a seller's nondisclosure when the buyer relies upon an independent inspection." The court first noted that the enforceability of an "as-is" clause is dependent on the totality of the circumstances.

After analyzing several factors, the court concluded that the "as-is" clause was enforceable; although not binding if the buyers were fraudulently induced. The court then held that "under the facts of this case," the buyer's independent inspection defeated the reliance element of the fraudulent inducement claim as well as the producing cause element of the DTPA claim. The court stated, however: "[w]e do not hold that an independent inspection will always bar DTPA and fraudulent inducement claims. Rather, we hold only that, under the facts and circumstances of this case, the [sellers] met their traditional summary judgment burden, and the [buyers] did not meet their burden of presenting evidence to create genuine issues of material fact on each element of their fraudulent inducement and DTPA claims or on an element of the [sellers'] affirmative defenses."

We disagree with the Sellers that the apparent influence of the *Volmich* decision on Sisk's decision to nonsuit supports a conclusion that Sisk nonsuited to avoid an unfavorable ruling. As the court observed in *Riser*, a conclusion that a defendant has prevailed is unwarranted when:

> a plaintiff whose claims appeared meritorious at the onset . . . encounter[s] various changes in his litigation posture during the unpredictable course of litigation. 'Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation.'

240 F.3d at 510 (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). Although *Volmich* did not contradict existing case law, it was a clarification of the law as it applied to residential real estate transactions involving facts similar to those underlying Sisk's claims. It is reasonable to infer that the legal and factual similarity of his case with *Volmich* would weigh negatively on Sisk's assessment of his future likelihood of success; however, it does not follow that the Sellers are prevailing parties merely because a clarification of the law impacted Sisk's decision to nonsuit his claims. Just as we avoid penalizing a plaintiff who nonsuits only after discovering previously unknown factual weaknesses in his case, we similarly

avoid penalizing a plaintiff who nonsuits only after learning of previously unknown legal weaknesses in his case. *Riser*, 240 F.3d at 510; *see also Epps*, 351 S.W.3d at 871. Accordingly, we reject the Sellers' contention that any reliance on *Volmich* as a reason for the nonsuit supports an inference that Sisk nonsuited to avoid an unfavorable ruling on the merits.

    *2. Timing of Nonsuit and Claim's Initial Merit*

    Next, we will determine whether the timing of Sisk's nonsuit—five days after the Sellers' motion for summary judgment—supports an inference that the nonsuit was filed to avoid an unfavorable ruling on the merits. The *Epps* Court noted that "federal courts have tended to place great weight upon the fact that a plaintiff's nonsuit has followed closely on the heels of a defendant's potentially dispositive motion." 351 S.W.3d at 870 (citing *Butler v. MBNA Tech., Inc.*, No. 3:02-CV-1715-H, 2004 WL 389101, at*5 (N.D. Tex. Mar. 1, 2004)). The Court stated, "[f]or example, as in *MBNA*, if a plaintiff nonsuits only after a motion for summary judgment is filed, it may suggest that the plaintiff elected to do so in order to escape summary judgment." *Id.* at 871. The court in *MBNA* also noted, however, that "the timing of the dismissal suggested that the plaintiff's dismissal was *not motivated by her failure to uncover evidence supporting her claims in discovery*, but instead, was attributable to her desire to avoid an unfavorable judgment." *Epps*, 351 S.W.3d at 870 (citing *MBNA*, 2004 WL 389101, at*5) (emphasis added).

    The *MBNA* court considered the timing of the plaintiff's voluntary dismissal in addition to the plaintiff's opportunity to discover previously unknown flaws in a case. Considering a plaintiff's opportunity to discover previously unknown flaws in a case is consistent with the *Epps* Court's holding that a court should evaluate the merits of the plaintiff's case "when filed," to determine whether the plaintiff's subsequent nonsuit was taken to avoid an unfavorable ruling. *Epps*, 351 S.W.3d 871. Thus, the timing of a plaintiff's nonsuit, following a defendant's dispositive motion, does not in itself support an inference that the nonsuit was taken to avoid an

unfavorable ruling. That inference is supported, however, when a plaintiff's nonsuit follows a defendant's motion that is dispositive because the plaintiff knowingly pursued a claim that was without merit.

Accordingly, we must determine whether there is "evidence that the suit was not without merit when filed," such that the timing of the nonsuit supports an inference that Sisk nonsuited to avoid an unfavorable ruling. *Id.* The Sellers contend the existence of their various affirmative defenses rendered the claims without merit. In particular, the Sellers emphasize that the existence of the "as-is" clause and the independent inspection were fatal to all of Sisk's claims.

The enforceability of an "as-is" provision is contingent upon factual analysis considering: (1) the sophistication of the parties and whether they were represented by counsel, (2) whether the contract was an arm's length transaction, (3) the relative bargaining power of the parties and whether the contractual language was freely negotiated, and (4) whether that language was an important part of the parties' bargain as opposed to being a "boilerplate" provision. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995). Sisk argues there was a disparity in bargaining power because the Sellers were experienced real estate developers whereas Sisk was a first-time homebuyer. Thus, it cannot be said that the "as-is" clause necessarily barred all of Sisk's claims because Sisk had an arguable basis for believing the clause was unenforceable.

At the time the lawsuit was filed, the Fort Worth Court of Appeals decision in *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 313 (Tex. App.—Fort Worth 1993, no writ), was instructive as to whether an independent inspection defeated a buyer's claims against a seller for fraud and DTPA violations. *Camden* involved a commercial real estate contract with an "as-is" clause. The buyer's appraisal of the property revealed a crack in the foundation which the buyer personally observed. The buyer obtained quotes to repair the foundation, unsuccessfully

attempted to negotiate a concession from the seller, but still purchased the property. The court held, "[w]hen a person makes his own investigation of the facts, and knows the representations to be false, he cannot, as a matter of law, be said to have relied upon the misrepresentations of another." *Id.* at 311. Sisk could have easily believed *Camden* was distinguishable because the buyer in that case had actual knowledge of the foundation defect and attempted to negotiate a concession. Sisk did not discover the allegedly inadequate foundation piers until after closing. Additionally, Sisk disputed that the inspection report apprised him of the plumbing and foundation problems that are at issue. On this record, we cannot conclude that Sisk's claims were without merit merely because the contract contained an "as-is" clause and because Sisk arranged for an independent inspection prior to closing.

Although the temporal proximity of a plaintiff's nonsuit may, in some situations, suggest that the nonsuit was filed to avoid an unfavorable judgment, that cannot be said when a plaintiff pursues a claim that is not without merit and nonsuits only after discovering previously unknown legal or factual impediments to success. Such is the case here where Sisk had legitimate grounds to pursue his claims when he discovered the inaccuracy of the Sellers' representations. The Sellers provided inconsistent responses on the Disclosure with regard to the previous foundation repairs and the Sellers did not disclose the alleged inadequacy of the foundation repairs. Also, the Sellers' representation that there were no known defects in the plumbing system contradicted information Sisk learned from the Sellers' plumber. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Christiansburg*, 434 U.S. at 422. Although the "as-is" clause and the independent inspection represented obstacles for Sisk, they were not insurmountable.

*3. Conclusion*

Sisk's nonsuit of his claims closely followed the Fort Worth Court's clarification in the law in *Volmich*. Moreover, the record established that Sisk's claims were not meritless at the time he filed his lawsuit. The trial court did not err in determining that: (1) Sisk did not nonsuit his claims to avoid an unfavorable judgment on the merits; and (2) the Sellers were not prevailing parties.

### SANCTIONS ORDERS

The trial court ordered sanctions against the Sellers in 2011. For the first time on appeal, the Sellers argue that the orders are invalid because they were signed by Judge Sydney C. Farrar, Jr., and not by the presiding judge of the 236th District Court, Judge Thomas W. Lowe III. Even if this issue were preserved for appellate review, the Sellers have produced no evidence to suggest that Judge Farrar, a former district judge and former justice on the Fort Worth Court of Appeals, lacked authority to sign the orders. *See* TEX. GOVT. CODE ANN. §§ 74.052; .054 (West 2013); *see also In re Tenet Healthcare, Ltd.*, 104 S.W.3d 692, 694 (Tex. App.—Corpus Christi 2003, no pet.) (visiting judge's authority depends on the language in the order of assignment). We overrule the Sellers' point of error.

### CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice