**M. L. MAYFIELD PETROLEUM CORPORATION et al., Appellants,**

v.

**Helen McVey KELLY et al., Appellees.**

**No. 452.**

Court of Civil Appeals of Texas, Tyler.

Jan. 15, 1970.

Rehearing Denied Feb. 12, 1970.

H. M. Harrington, Jr., Longview, for appellants.

Law Offices of Fred Erisman, Longview, for Helen McVey Kelly and O. Kelly.

Bean, Ford, Schleier & Dickerson, Foster T. Bean, Kilgore, for G. A. Beard.

Kenley, Boyland, Hawthorn & Starr, R. O. Kenley, Jr., Longview, for Byron G. Bronstad.

McKAY, Justice.

M. L. Mayfield Petroleum Corporation, M. L. Mayfield, and W. S. Morris brought suit against Helen McVey Kelly and husband, Ocie Kelly, Byron G. Bronstad and G. A. Beard alleging fraud under Article 4004, Vernon's Ann.Tex.Civ.St. (now Sec. 27.01, Business and Commerce Code, V.T. C.A.), in the sale of thirteen oil wells in

Kilgore Townsite, East Texas Field, Gregg County. Plaintiffs prayed for damages of $200,000.00, and sought judgment against defendants jointly and severally.

The allegations of plaintiffs in their pleadings were that defendant Helen McVey Kelly, the owner of the wells sold, represented that the wells were making their allowable (20 barrels per day), that each of the wells was capable of making its own allowable, and that such representations were false. It was alleged that Mrs. Kelly made the above representations to plaintiff Morris on March 6, 1965, and to plaintiffs Mayfield and Morris on March 13, 1965. It was also alleged that the defendant Beard, employed by Mrs. Kelly as switcher on the wells, gave plaintiff Morris certain information about equipment and production on March 6, 1965, and advised him that one well had been curved out but represented the remaining wells had never had any difficulty in making their full allowable, that the wells were still capable of making the same amount of oil as shown by tests made in February, 1965, and that such representations were false. Plaintiffs alleged that defendant Beard made substantially the same representations to both plaintiffs Mayfield and Morris on March 13, 1965, that all of the wells were easily capable of making their allowable.

Defendant Bronstad was alleged to have represented on March 6, 1965, and on March 13, 1965, that each of the wells was capable of making its own allowable. Bronstad was Mrs. Kelly's bookkeeper and employee and furnished copies of reports to the Railroad Commission and other information on production history. Bronstad's representations were alleged to be false.

Plaintiff Morris had received information that these wells were for sale some time prior to March 6, 1965, and when he talked to each defendant on that date, he was compiling information and data which he incorporated in a detailed report and analysis to plaintiff Mayfield on or before March 13, 1965.

It was alleged plaintiff Morris furnished to plaintiff Mayfield the information gathered by Morris from defendants, both oral statements and documentary and statistical data, and when Mayfield came to Kilgore on March 13, 1965, the representations as above set out were made to him. Mayfield, on March 13, 1965, delivered his check in the sum of $5,000.00 to Mrs. Kelly as earnest deposit to show his sincerity in attempting to obtain bank loans to raise funds to buy the wells at the agreed price of $210,000, and when the purchase price was paid, the sale would be effective April 1, 1965.

Plaintiff Mayfield took possession of the wells on April 1, 1965, and retained as his employee defendant Beard, the switcher, and Mayfield paid Beard's salary and received production reports from him from April 1, 1965. Mayfield obtained the necessary financing and paid $205,000 as the remainder of the purchase price on May 14, 1965. Beard notified Mayfield on May 18, 1965, that the wells would not make their allowable because of the encroachment of salt water.

Trial was had before a jury with Judge Sam B. Hall presiding. Judge David Moore received a partial verdict from the jury, and Judge Hall entered judgment for defendants that plaintiffs take nothing. Plaintiff Morris took a non-suit and was dismissed from the case before verdict or judgment, and therefore plaintiffs M. L. Mayfield Petroleum Corporation and M. L. Mayfield are appellants here.

■ Appellants' first point is that the trial court erred in granting defendants a total of 18 peremptory jury challenges. Rule 233, Vernon's Texas Rules of Civil Procedure, provides that each party to a civil suit shall be entitled to six peremptory challenges in a case in the district court. Parties on the same side of the docket may be entitled to separate peremptory challenges even though no affirmative relief

is sought, one against the other. Tamburello v. Welch, 392 S.W.2d 114 (Tex. Sup., 1965). In the Tamburello case, supra, the plaintiff charged each of the defendants with different acts of negligence, and the jury by its answers might have acquitted one defendant of negligence and found that the other was responsible for the collision.

■ In the instant case, the plaintiffs alleged false representations against each defendant at different times and places, and the jury might have found each defendant, separately, was guilty of fraud independently of the others. We believe the trial court was correct in allowing six challenges to each defendant here where plaintiffs prayed for a joint and several judgment under these circumstances. Tamburello v. Welch, supra; Brown & Root, Inc. v. Gragg, 444 S.W.2d 656 (Tex.Civ. App., Houston, 1st Dist., 1969, writ ref., n. r. e.).

■ The trial court must determine from the allegations in the pleadings whether two or more parties are entitled to six jury strikes each. Brown & Root, Inc. v. Gragg, supra; Cruse v. Daniels, 293 S.W.2d 616 (Tex.Civ.App., Amarillo, 1956, writ ref., n. r. e.).

There is no showing that appellants had to accept on the jury an objectionable juror. The juror said to be objectionable became such when he could not or would not agree to a verdict on issues favorable to appellants. The record here shows appellants had one strike left when they reached the objectionable juror. They did not strike him nor did they indicate they wanted to strike him or would have struck him as objectionable. Appellants' contention is that the objectionable juror would not have been reached except for the court allowing each of three defendants six challenges each. They did not show an objectionable juror sat on the case as a result of the court's action. Texas Employers' Ins. Ass'n v. Shropshire, 343 S. W.2d 772 (Tex.Civ.App., Texarkana, 1961, writ ref., n. r. e.); City of Hawkins v. E. B. Germany & Sons, 425 S.W.2d 23 (Tex.Civ.App., Tyler, 1968, writ ref., n. r. e.). Appellants' first point is overruled.

In their second point appellants contend that the trial court committed error in entering judgment on the partial findings of the jury.[1] Appellants complain that the

---

1. The jury verdict was substantially as follows:

1. Defendant Helen McVey Kelly made a representation that oil wells involved were each capable of making their daily allowable.

1A, 1B, 1C, and 1D. Jury unable to agree whether representation was false, whether plaintiffs relied on it, whether it was of a material fact essential and necessary for plaintiffs to enter into a contract to purchase property, and whether it was a material inducement without which plaintiffs would not have entered into the contract to purchase.

2. Defendant Beard represented to plaintiffs that oil wells were each capable of making their daily allowable with the exception of one well which was capable of producing 17 barrels of oil per day.

2A, 2B, 2C, and 2D. Jury unable to agree as to defendant Beard on same issues as 1A, 1B, 1C and 1D asked concerning defendant Helen McVey Kelly.

2E. Jury unable to agree whether Beard derived any benefit from such false representations, if any.

3. Jury unable to agree whether defendant Bronstad represented oil wells were each capable of making their daily allowable of oil shown on the test of W. O. Davis.

3A, 3B, 3C, 3D and 3E were same as 2A, 2B, 2C, 2D, and 2E except they were asked about defendant Bronstad and jury was unable to agree.

4. Plaintiff Morris made an independent investigation of the properties and of the representations of fact alleged to have been made by defendants.

4A. Such independent investigation was known to plaintiffs Mayfield and Mayfield Petroleum.

4B. Plaintiffs relied upon such independent investigation in making such purchase.

5, 5A, 5B. Jury unable to agree whether plaintiffs "exercised ownership" (defined as treating of property as one's own, exercising the care, custody and control

jury was deadlocked or hung, and (1) that there was no verdict, and (2) that the answers made by the jury would not support a judgment for either side.

The trial of this case began on Monday, February 17, 1969, and the evidence was concluded at noon on Friday, February 21, 1969. The charge was prepared, the case was argued to the jury during the afternoon of Friday, February 21, 1969, and the jury deliberated until 8:45 P. M. when they were recessed to Monday, February 24, 1969. They reconvened on Monday and deliberated until 5:00 P. M. On Tuesday, the jury reconvened and deliberated until 4:30 P. M. when they advised Judge David Moore, then presiding, that they were unable to reach a verdict. The Court had the jury brought into the courtroom and then asked whether the jury had answered any of the issues, and the foreman said they had. The Court then asked whether such answers were by unanimous agreement or by majority vote, and the foreman advised that some answers to some issues were unanimously agreed on while some were answered by majority vote. The Court then instructed the jury to return to the jury room, strike out all answers except those unanimously agreed upon. The jury then returned to the courtroom. There is some dispute about whether the Court asked the jury if the answers made were the answers of each juror, but the Court did have the foreman sign the verdict and

discharged the jury. The answers were then read to counsel after the jury had gone. Upon hearing the jury's answers, the defendants stated to the Court that they wished to make a motion for judgment, and plaintiffs' counsel stated that he wanted to move for a mistrial. The Court advised counsel they would have to present their motions to Judge Hall who tried the case. Such motions were subsequently filed and heard by Judge Hall.

Counsel may have anticipated or expected the Court to declare a mistrial and dismiss the jury when they were brought into the courtroom in response to the jury's message that it was hung. However, the Court never declared a mistrial, but, to the contrary, everything he did indicated that he would receive, and he did receive, the partial verdict of the jury. All counsel agreed to the discharge of the jury, and the jury had left the courtroom when the Court read the answers to those issues unanimously agreed upon, and named the issues left unanswered. The questions arise (1) whether appellants waived their right to complain to the receipt of a partial verdict under the circumstances, and (2) whether the Court committed error in rendering judgment based on the partial verdict.

■ It is our opinion that the court's action in failing to declare a mistrial, in sending the jury back to the jury room to bring back answers to only those issues

---

of same, either individually, or through other authorized persons) over the leases where wells were located from and after April 1, 1965.

6, 6A, 6B. Evidence of and encroachment of salt water into each of the leases on or before April 1, 1965, was open and obvious to plaintiffs Mayfield and Mayfield Petroleum.

7. Plaintiffs Mayfield and Mayfield Petroleum knew and appreciated the probability of salt water encroachment into the leases involved.

7A. Plaintiffs assumed the risks from the encroachment of salt water, as it existed at the time and on the occasion in question.

8. Jury unable to agree whether plaintiffs had superior knowledge of the prob-

ability of salt water encroachment into the leases involved than did Helen McVey Kelly.

8A. Jury unable to agree whether plaintiffs relied on such superior knowledge in completing the purchase.

9, 9A. Jury unable to agree on the value of the property as represented and the value in the condition it was delivered.

10. Jury unable to agree that the subsurface encroachment of salt water into the wells on and after April 1, 1965, was the sole cause of any loss, injury or damage, if any, sustained by plaintiffs.

11. Jury unable to agree on the date the wells were unconditionally delivered to plaintiff Mayfield.

unanimously agreed upon, having the foreman sign the verdict, and, in effect, receiving it as a verdict was notice to appellants that they must object to such procedure, or request the jury to be sent back to deliberate further, or request that the Court discharge the jury without sending them back to the jury room. Failing to object or to move for a mistrial until the jury had been discharged, appellants waived their right to complain even though the answers made on the partial verdict were not known until after the jury was discharged.

In Lewis v. Texas Employers' Ins. Ass'n, 151 Tex. 95, 246 S.W.2d 599 (Tex.Sup., 1952), the jury failed to answer the partial disability issues in a workmans' compensation case. When the Court read aloud "no answer," no objection was made that the verdict was incomplete, no request was made that the verdict not be accepted or that the jury be instructed to retire and complete their verdict, and no objection was made to the acceptance of the verdict. The Court there said:

"The first question presented here is whether this error must be preserved in order to be considered. We hold that it must be preserved to be reviewed on appeal."

We hold that the appellants had the burden of preserving any error and that they did not do so. Lewis v. Texas Employers' Ins. Ass'n, supra; Greener v. Greener, 413 S.W.2d 949 (Tex.Civ.App., Amarillo, 1967, writ ref., n. r. e.); Continental Casualty Co. v. Street, 379 S.W.2d 648 (Tex.Sup., 1964); McDonald, Texas Civil Practice, Sec. 15.03 (pocket part), and cases cited.

Rule 289, T.R.C.P. provides that the jury may be discharged (1) when they cannot agree and both parties consent, or (2) when they have been kept together for such time as to render it altogether improbable that they can agree. Rule 290, T.R.C.P. defines a verdict as a written declaration by the jury of its decision either on a general charge or special issues submitted.

Rule 301, T.R.C.P., provides that the judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict. In Stalder v. Bowen, 373 S.W.2d 824 (Tex.Civ.App., Dallas, 1964, writ ref., n. r. e.), we find this language:

"* * * while Rule 290, T.R.C.P. refers to 'the whole or all the issues submitted', it is now well established that the trial court has not only the right, but the duty to receive a partial verdict which will sustain a judgment. In order to support the entry of a judgment based upon a partial verdict the answers made by the jury must be of such a nature that the winning party was entitled to judgment no matter what the jury may have said in response to the unanswered issues. (citing authorities). While the law requires the court to submit every issue that is essential to a recovery or a defense, a jury finding upon one or more of such submitted issues may compel a judgment, irrespective of any finding that could be made upon the other issues. (citing authorities).

*    *    *    *    *    *

"* * * a trial judge, in rendering judgment upon a special issue verdict, must construe such verdict as a whole in the light of the pleadings and the evidence. (citing cases)."

See also McDonald, Texas Civil Practice, Sec. 15.03 (pocket part), and Security State Bank & Trust v. Craighead, 440 S.W.2d 701 (Tex.Civ.App., San Antonio, 1969, writ ref., n. r. e.).

We believe the trial court properly rendered judgment for defendants (appellees here) because in construing such verdict as a whole in the light of the pleadings and the evidence, the facts were so overwhelmingly in favor of defendants that a judgment against them could not stand. The evidence shows that the plaintiffs (appellants) had at least as much information as defendants, if not more, and that the representations by defendants that the

wells had made or were capable of making their allowable on the critical dates involved in their transaction were not, in fact, false. The production records, the Railroad Commission records, and other data and statistics show the wells (with the exception of one well making 17 barrels) had made or were making their allowable of 20 barrels on March 6, 1965, March 13, 1965, April 1, 1965, and May 14, 1965. Both plaintiffs Mayfield and Morris were graduate engineers with long experience in the oil business, and Morris was acknowledged to be probably the best authority on salt water encroachment in the East Texas Field.

It is a matter of common knowledge that petroleum is fugitive in nature, and that the existence of or the duration of the existence within the limits of a certain tract of land is uncertain. See Hatt v. Walker, 33 S.W.2d 489, (499), err. dis., (Tex.Civ.App., Dallas, 1930).

We believe there is a further reason that the judgment was properly rendered for defendants and that is because of the authorities which hold that no purchaser who relies on his own investigation may successfully assert that he relied upon representations made to him by his vendor. If a purchaser makes a personal investigation which is free and unhampered and the conditions are such that he must obtain the information he desires, he is presumed to rely upon his own investigation rather than on representations made to him by his vendor. 174 A.L.R., page 1037, Sec. 8; Marcus v. Kinabrew, 438 S.W.2d 431 (Tex.Civ.App., Tyler, 1969, n. w. h.); Whitsel v. Hoover et al., 120 S.W. 2d 930 (Tex.Civ.App., Amarillo, 1938, writ dism.); Spark v. Lasater, 234 S.W. 717 (Tex.Civ.App., San Antonio, 1921, n. w. h.). Appellants' third point is overruled.

We have examined appellants' points Four and Five and find they are without merit, and same are overruled.

The judgment of the trial court is affirmed.