James R. BARTLETT, Linda Beth
Bartlett, and William L.
Andersen, Appellants,

v.

Gunter SCHMIDT, Appellee.

No. 13–98–295–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 2000.

Rehearing Overruled Dec. 14, 2000.

**36**

Deborah R. Sundermann, Corpus Christi, for Appellants.

John Miller, Jr., Sinton, Pat Morris, Nicolas, orris, Gilbreath & Smith, Corpus Christi, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

**OPINION**

Opinion by Chief Justice SEERDEN.

This is an appeal of a judgment, based upon a jury verdict, which awards appellee, Gunter Schmidt, $58,700, plus prejudgment interest, against James R. Bartlett, individually; Linda Beth Bartlett, individually, and as co-independent executrix of the Estate of Martha Francis Pugh, deceased; William Andersen, individually and as co-independent executor of the Estate of Martha Francis Pugh; Stewart Title of San Patricio County, Inc.; and Stewart Title Guaranty Company. The judgment furthermore awards appellee the sum of $499,000.00, including pre-judgment interest against James R. Bartlett, individually; Linda Beth Bartlett, individually and as co-independent executrix of the estate; and William Anderson, individually and as co-independent executor of the estate. While all parties against whom the judgment was taken were originally parties to this appeal, the Stewart Title Companies have settled their part of the dispute and have been dismissed from this appeal.

This lawsuit arose with the purchase of real estate by appellee from Mrs. Bartlett, Andersen, and Thomas Heard Martin (who was absolved of liability in the judgment) through their broker, James R. Bartlett. The basis for the damages is that the property was restricted for only residential use; whereas, appellee intended to use the property for commercial purposes. The facts were known to appellants but not to appellee. The title companies negligently represented to appellee that there were no restrictions on his use of the property.

*General Factual Statement*

Summarizing the facts of this case in the light most favorable to the jury's verdict and the judgment, appellee purchased the property in question with the intention of using it as a shipyard to construct ocean-going vessels. The suitability of the property originally came to his attention when he personally viewed it. A sign on the property advised it was for sale and gave a telephone number for "Bartlett Real Estate Company, Inc." Schmidt had a realtor in Ingleside, Bill McAllister, contact James Bartlett, of Bartlett Real Estate, also the husband of Linda Beth Bartlett, to make an offer to purchase the property. When Schmidt and Bartlett met to discuss the purchase, Schmidt told Bartlett of his intention to use the property to construct ships. Bartlett orally advised him there were no restrictions on the property and he could use it for anything he wanted.

McAllister, on Schmidt's behalf, submitted an earnest money contract (EMC) to Bartlett and Schmidt on a form provided by the Texas Association of Realtors entitled "ONE TO FOUR FAMILY RESIDENTIAL EARNEST MONEY CONTRACT–RESALE, ALL CASH, ASSUMPTION, THIRD PARTY CONVENTIONAL OR SELLER'S FINANCING." It was signed by the parties and provided for a title insurance policy to be issued by Stewart Title.

The title company issued a title commitment to Schmidt which showed covenants and restrictions referenced to a deed and plat involving "Ingleside Cove area and vicinity." The deed and "Covenants and Restrictions" restricted the use of portions of land not being purchased by Schmidt to uses that would prevent Schmidt from constructing his desired building on the restricted property. The documents submitted by the title company to Schmidt had no restrictions on the land being purchased by him. However, the title company did not furnish Schmidt with the documents replating and modifying the restrictions to include the property acquired by Schmidt.

The commitment also specifically excepted from coverage of the title insurance:

The Covenants, terms, conditions, restrictions and reservations contained in Warranty Deed dated June 18, 1958 from INGLESIDE LAND COMPANY to W.D. WELLER INVESTMENT COMPANY, recorded in Volume 234, Page 552, Deed Records of San Patricio County, Texas.

Schmidt examined these documents and determined the restrictions did not apply to the property he was buying. He also contacted his attorney in Germany[1] who advised Schmidt that his property was not burdened by the restrictions and covenants. The sale of the property to Schmidt was completed in May or June, 1994.

When Schmidt began to lay the foundation for his shipbuilding enterprise, he was advised that the property had been annexed by Ingleside on the Bay and limited to residential use only. After being informed of the limitations, Schmidt continued landscaping the property and obtained a building permit to build the facility and to use the property as his residence.

*Negligent Misrepresentation, Fraud, and DTPA Claims*

The jury found Bartlett liable on three distinct theories of liability: negligent misrepresentation, fraud, and deceptive trade practices. By their first issue, appellants contend that there is no evidence that Schmidt relied on any representations made by Bartlett. By their second issue, appellants argue that there is no proof that Bartlett's representations were either the producing cause or the cause-in-fact of Schmidt's damages.

*A. Fraud and Negligent Misrepresentation*

■ Both fraud and negligent misrepresentation require a showing of reliance.

1. Schmidt is a German citizen.

*See Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (negligent misrepresentation); *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990) (fraud).

Appellants argue that Schmidt's consultation with an attorney regarding his purchase of the property constitutes an independent investigation which they allege negates all of his claims. Many courts have held that

> where false and fraudulent representations are made concerning the subject-matter of a contract, but the person to whom they are made, before closing the contract inspects and examines the subject of the contract, or conducts an independent investigation into the matters covered by the representations, which is sufficient to inform him of the truth, and which is not interfered with or rendered nugatory by any act of any other party, it is presumed that he places his reliance on the information acquired by such investigation and on his own judgment based on such facts, and not on the representations made to him, and therefore he cannot have relief because his bargain proves unsatisfactory to him.

*Marcus v. Kinabrew,* 438 S.W.2d 431, 432 (Tex.Civ.App.—Tyler 1969, no writ); *see also Kolb v. Texas Emp. Ins. Ass'n,* 585 S.W.2d 870, 872 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Lone Star Machinery Corp. v. Frankel,* 564 S.W.2d 135, 138 (Tex.Civ.App.—Beaumont 1978, no writ); *Mayfield Petroleum Corp. v. Kelly,* 450 S.W.2d 104, 109 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.); *Mann v. Rugel,* 228 S.W.2d 585, 587 (Tex.Civ.App.—Dallas 1950, no writ).

 The common thread of the decisions reaching this conclusion is that, regardless of the result of his investigation, the buyer's decision to undertake such an investigation indicates that he or she is not relying on the seller's representations about the property. The record shows that Schmidt undertook such an investigation. Prior to his purchase of the property, Schmidt asked third parties to review conveyancing documents specifically to assure that no restrictions would interfere with his development of the property for his intended purpose. He did this after specifically asking Bartlett about the very same thing. He did not rely on Bartlett's representations in making his decision to purchase the property.

Accordingly, as a matter of law, Schmidt cannot recover for either negligent misrepresentation or fraud. Because we hold that Schmidt cannot recover for negligent misrepresentation or fraud, we need not reach appellants' seventh issue concerning Schmidt's failure to allege negligence in his petition. *See* Tex.R.App. P. 47.1. We also need not consider the causation element necessary to support either claim. *See Alamo Lumber Co. v. Pena,* 972 S.W.2d 800, 806 (Tex.App.—Corpus Christi 1998, rev.den.) (negligent misrepresentation); *Fun Time Centers, Inc. v. Continental Nat'l Bank,* 517 S.W.2d 877, 883 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.).

Accordingly, because Schmidt did not rely on Bartlett's representations, we hold that he cannot recover for either fraud or negligent misrepresentation.

## B. DTPA Claims

 At the time of the actions complained of in this case, the DTPA provided recovery for false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. Tex. Bus. & Comm. Code Ann. § 17.46(b)(23) (Vernon Supp. 1994).[2] To recover damages for any deceptive act or practice under that version of the Act, it is necessary to prove the conduct was a "producing cause" of the

---

2. Because all of the events in issue in this appeal occurred in 1994, the subsequent changes to the DTPA are not applicable here. *See generally* Tex. Bus. & Comm.Code Ann.

§ 17.42 (Vernon 1995); Act of June 8, 1995, 74th Leg., R.S., ch. 414, § 20, 1995 Tex. Gen. Laws 3004.

injuries sustained. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). Producing cause is an "efficient, exciting or contributing cause, which in a natural sequence produced injuries or damages complained of, if any." *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). In other words, producing cause "requires proof that an act or omission was a substantial factor in bringing about injury which would not have otherwise occurred." *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). There may be more than one producing cause of a plaintiff's injury. *Id.*

▮ Texas courts have imputed the concept of intervening or superseding causes into the DTPA proof as well. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 481 (Tex.1995). This requires that the causal connection between the alleged wrong and the plaintiff's injury be unbroken. *Id.* If the defendant can demonstrate that a "new and independent basis" for the plaintiff's actions exists, such proof may negate the assertion that the defendant's acts were the producing cause of the plaintiff's injury. *See id.* at 475; *Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex.App.—Dallas 1988, no writ); *Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956, 959 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

▮ In sustaining his or her burden of proof, a plaintiff need not show either reliance or foreseeability under this version of the DTPA. *Weitzel,* 691 S.W.2d at 600; *Camden Mach. & Tool Inc. v. Cascade Co.,* 870 S.W.2d 304, 311 (Tex.App.—Fort Worth 1993, no writ). Reliance may, nevertheless, be a factor in deciding whether the defendant's conduct was a producing cause of damages to the plaintiff. *See Cianfichi v. White House Motor Hotel,* 921 S.W.2d 441, 443 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Century 21 Real Estate Corp. v. Hometown Real Estate Co.,* 890 S.W.2d 118, 130 (Tex.App.—Texarkana 1994, writ denied). Regardless, the plaintiff must show that there is some unbroken causal connection between the allegedly deceptive act and the actual damages suffered. *See Prudential,* 896 S.W.2d at 161.

▮ In the context of real estate sales, under Texas law, when a seller makes an affirmative representation, the law imposes a duty upon the seller to know whether such a statement is true. *First Title Co. of Waco v. Garrett,* 860 S.W.2d 74, 76 (Tex.1993). A seller and its agent may be liable under the DTPA for affirmative misrepresentations. *Henry S. Miller Co. v. Bynum,* 797 S.W.2d 51, 55 (Tex.App.—Houston [1st Dist.] 1990) *aff'd,* 836 S.W.2d 160 (Tex.1992).

▮ The record in this case reflects that Schmidt was visiting the Ingleside area, looking for an appropriate plot of land upon which to build and maintain his shipbuilding facility, or "hangar." One day in April of 1994, Schmidt observed a property which he deemed suitable for his purposes, noticed the property was for sale, and attempted to contact the listed seller, Bartlett Real Estate Company. Finding that he was unable to contact anyone at the listed number, he returned to Ingleside, and contacted the first realtor he saw, Bill McAllister. After some conversations with McAllister, during which Schmidt's intended use of the property was discussed in general and somewhat vague terms, McAllister attempted to and did contact James Bartlett.

McAllister engaged Bartlett in a preliminary conversation which focused primarily upon the price of the property. After discovering that the price Schmidt was willing to offer was substantially less than the price Bartlett was willing to accept for the property, McAllister put Schmidt on the phone to negotiate with Bartlett. The two engaged in a discussion, during which Schmidt told Bartlett that he was "going to make sailing catamarans." Schmidt claims Bartlett assured him that there were no restrictions on the property to prohibit him from conducting his business:

Q [Schmidt's counsel]: Now tell the jury what specific [sic] was said to you by Jim Bartlett about restrictions on that property.

A [Schmidt]: He confirmed that what I've already been told [by McAllister], there were no restrictions, and I do ever what [sic] I want, and it was out of city limits, it was not zoned.

This is the sole statement upon which Schmidt bases his DTPA claim against Bartlett.[3]

Schmidt and Bartlett agreed to enter into an earnest money contract which required Schmidt to deposit $1000 and Bartlett to secure a title commitment. The final sale of the property was conditioned upon a showing of good title by the title company. Once the earnest money contract was executed, the title company incurred an obligation to show any restrictions on the use of the property. The title company provided Schmidt with numerous documents as part of its title commitment, including a schedule of relevant covenants and restrictions. Schmidt read the title commitment and the schedule of covenants and restrictions. He concluded that since he was purchasing lots 1 through 12 of Block 57, and since the only listed restrictions applied to lots 15 through 24 of Block 57, his property was not encumbered by the restrictions.[4] Schmidt consulted with his German attorney, who likewise concluded that the property Schmidt sought to purchase was not encumbered. After conducting his double check, Schmidt closed the sale of the property.

While we accept as true Schmidt's assertion that Bartlett's statements were a cause of his damages, his decision to enter into the earnest money contract and the subsequent acts of reviewing the title commitment were "new and independent" causes of those injuries.

The Supreme Court of Texas has recognized that real estate purchasers often rely upon title commitments in making decisions to purchase property. *See Garrett,* 860 S.W.2d at 77. Reliance on such external assessments of the feasibility of purchasing land has been held to introduce a "new and independent" cause of the buyer's damages in several pertinent DTPA cases, thus negating the producing cause element of a DTPA claim. *See Camden Mach. & Tool,* 870 S.W.2d at 313; *Dubow,* 746 S.W.2d at 860.

The Dallas Court of Appeals has held that a careful subsequent investigation was an intervening and superseding, "new and independent" cause of a buyer's damages. *See Dubow,* 746 S.W.2d at 860. In *Dubow,* appellants sought to purchase a home from appellees. *Id.* at 858. After consulting with experts and conducting further investigation which disclosed certain defects in the house, appellants renegotiated the purchase price for the home. *Id.* at 859. When appellants were dissatisfied with the house, they subsequently claimed that statements made by the sellers were the

---

3. Schmidt expressly stated that Bartlett's representations directly influenced his decision to enter into the earnest money contract, testifying that Bartlett's statement "makes me sign the earnest money contract."

4. The record shows that the title commitment also provided Schmidt with adequate information to discover that his property was actually encumbered by the restriction. Schedule B of the title commitment provides:

 In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorney's fees, and expenses resulting from:
 * * * *

13. The Covenants, terms, conditions, and restrictions and reservations contained in Warranty Deed dated June 18, 1958, from INGLESIDE LAND COMPANY to W.D. WELLER INVESTMENT COMPANY, .... (recording data omitted).

That Warranty Deed covers all of Block 57. Investigation of the recording data provided in the title commitment furthermore discloses that Block 57 has been replatted and that the restriction has run with the land, and now covers the entirety of Block 57. Arguably, this information placed Schmidt on constructive notice of the restriction prior to his decision to purchase.

producing cause of their injuries. *Id.* at 860. The court of appeals affirmed a summary judgment for the sellers, concluding that "the 'careful inspection of the house' and the 'professional opinions' obtained by the [appellants] were the sole efficient cause of the [appellants'] actual damages." *Id.* The court concluded that the sellers proved as a matter of law that their representations were not the producing cause of the appellants' injuries. *Id.* at 861.

Similarly, the Fort Worth Court of Appeals has held that a seller's representations were not the producing cause of the buyer's injuries where the buyer undertook his own investigation prior to purchasing the property. *Camden Mach. & Tool, Inc.*, 870 S.W.2d at 313. In *Camden,* the buyer sought an appraisal of the building he sought to purchase. *Id.* at 307. After the appraisal revealed a previously-undisclosed crack in the foundation, the buyer investigated the cost to repair the foundation and received varying estimates. *Id.* at 308. Despite the seller's unwillingness to renegotiate and the buyer's own awareness that the foundation problem was severe, the buyer decided to "bite the bullet" and absorb the repair costs in his purchase price. *Id.* The court concluded that the buyer's subsequent investigation and continued habitation established that he would have purchased the building regardless of seller's representations, and thus, established as a matter of law that the seller's statements were not the producing cause of his injuries. *Id.* at 313.

While neither of the foregoing cases is dispositive of the present dispute, they are helpful to our analysis. In each, the court concluded that the subsequent investigation by the buyer was a "new and independent" basis upon which the sale was consummated. While there are certain factual differences which make this case a closer call, we are convinced that Schmidt's subsequent investigation here, and particularly, his expressed reliance upon the title commitment, *see Garrett,* 860 S.W.2d at 77, is sufficient as a matter of law to negate the producing cause element of his DTPA claim against Bartlett.

Appellant's first and second issues are sustained.

Because we conclude that James Bartlett's representations were neither the producing cause nor the cause-in-fact of Schmidt's decision to purchase this property, we need not consider appellants' remaining issues. TEX.R.APP. P. 47.1.

The judgment of the trial court is REVERSED and judgment RENDERED that Schmidt take nothing.