

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-12-00050-CV

| | | |
|---|---|---|
| Helmut Volmich and Petra Volmich | § | From the 30th District Court |
| | § | of Wichita County (167,840-A) |
| v. | § | March 14, 2013 |
| Richard Braden Neiman and Traci L. Neiman | § | Opinion by Justice Gardner |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellants Helmut Volmich and Petra Volmich shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Anne Gardner



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00050-CV

HELMUT VOLMICH AND PETRA
VOLMICH

APPELLANTS

V.

RICHARD BRADEN NEIMAN AND
TRACI L. NEIMAN

APPELLEES

----------

## FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellants Helmut and Petra Volmich appeal the trial court's summary judgment in favor of Appellees Richard Braden Neiman and Traci L. Neiman. The Volmiches contend in two issues that the trial court erred by granting

---

[1]*See* Tex. R. App. P. 47.4.

summary judgment because the "as-is" clause in the parties' sale contract does not as a matter of law defeat their affirmative claims or establish the Neimans' affirmative defenses.  We affirm.

## II.  Factual and Procedural Background

The Neimans, as part of the process of listing their home for sale, executed a Seller's Disclosure Notice concerning the home's condition on February 11, 2005.  The Neimans moved from the property in approximately May 2005 but kept the home listed for sale.

In February 2006, the Neimans entered into a contract with the Volmiches for the sale of the home.  Mr. Volmich had viewed the property on multiple occasions with his realtor before making an offer to purchase the property.  As part of the contract, the Volmiches had the unrestricted right to terminate the contract during a ten-day period.  The ten-day termination period was extended an additional three days by agreement of the parties.

In the interim, Mr. Volmich hired Accurate Inspections to conduct an inspection of the home.  Don Crook conducted the inspection on February 19, 2006.  The inspection report stated that the roof covering was "not functioning or in need of repair"; that the roof showed signs of previous repairs, which may have been the location of prior leaks; that there was moisture-related damage to the plywood decking; that there were moisture stains observed on the "back side of the roof decking/framing"; and that the interior and exterior walls were "not functioning or in need of repair."  The report also stated that there were moisture

3

stains on the upper laundry closet wall that appeared to be the result of a possible water heater leak, that the walls showed a substantial increase in moisture content in the stained area, that there was moisture-related deterioration around the front plant-room windows and at the base of the garage door frame, and that the ceilings and floors were "not functioning or in need of repair." Finally, the report stated that moisture stains on the ceiling in the garage mechanical room appeared to be the result of a previous roof leak.

The parties closed on the property on March 28, 2006. On February 8, 2008, the Volmiches filed suit against the Neimans, Andy Lundgren, and Domain Real Estate Services, Inc.[2] In the lawsuit, the Volmiches alleged that the Neimans (1) failed to disclose information concerning the real property that was known at the time of the transaction; (2) breached an implied warranty that the premises would be in good condition as represented; (3) negligently marketed and sold the real property; (4) breached an implied warranty of merchantability; (5) failed to disclose defects in the property; and (6) breached their contract.

On September 16, 2011, the Neimans filed a traditional motion for summary judgment. The Neimans first raised the affirmative defense of estoppel by contract, asserting that the Volmiches contractually accepted the property "as is" at the time of sale, thereby waiving the right to claim alleged damages. The Neimans also raised the affirmative defense of waiver, arguing that the

---

[2]Andy Lundgren and Domain Real Estate Services, Inc. were dismissed as defendants and are not parties to this appeal.

4

Volmiches had hired independent inspectors and had relied on the inspectors' professional judgment and not on the Neimans' representations. Lastly, the Neimans moved for summary judgment on each of the Volmiches' claims. The Neimans asserted that because the Volmiches had obtained their own inspection that disclosed the problems the Volmiches later complained about, the inspection superseded any alleged wrongdoing on the Neimans' part.

In their response to the motion for summary judgment, the Volmiches asserted that the sales contract did not contain "as is" language and that the contractual clause at issue was predicated upon the Neimans' truthful disclosure. The Volmiches also asserted that reliance on an independent inspection was not enough to constitute a new and independent basis for the purchase of the home and did not supersede the Neimans' non-disclosure. The Volmiches finally asserted that all of the alleged defects were not listed in the inspection report.

The trial court granted the Neimans' motion for traditional summary judgment on November 2, 2011. The trial court's order reflects that it granted the Neimans' motion for summary judgment in its entirety, stating that there was no genuine issue of material fact as to the Neimans' affirmative defenses of estoppel by contract and waiver, that the Neimans were entitled to summary judgment thereon, and that the Neimans disproved at least one element of each of the Volmiches' claims. Only the Volmiches' fraudulent inducement and DTPA claims are at issue in this appeal.

### III.  Standard of Review

We review a summary judgment de novo.  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).  Also, a defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.  *Frost*, 315 S.W.3d at 508–09; *see* Tex. R. Civ. P. 166a(b), (c).  To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense.  *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

### IV.  Discussion

The Volmiches present two issues on appeal.  They inquire in their first issue whether a "boiler-plate 'as-is' clause" supersedes a seller's nondisclosure when the buyer relies upon an independent inspection.  In their second issue,

6

they ask whether a "boiler-plate 'as-is' clause" conclusively establishes estoppel by contract and waiver as affirmative defenses when a party is fraudulently induced to enter a contract because of nondisclosure of material facts. Because these issues are interrelated under the circumstances of this case, we discuss them together.

The parties used a standard contract form prepared by the Texas Real Estate Commission (TREC) for the transaction. In the contract, the Volmiches contractually bound themselves to accept the property "in its present condition." The relevant contract provision states:

> ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: treat for termites if inspection deems necessary.

Texas courts have interpreted contract language stating "in its present condition" to be an agreement to purchase the property "as is." *See Cherry v. McCall*, 138 S.W.3d 35, 39 (Tex. App.—San Antonio 2004, pet. denied) (construing "in its present condition" as an "as is" agreement); *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 251 (Tex. App.—Waco 2001, pet. denied) (construing to be "as is" certain contract language stating that "[b]uyer accepts the Property in its present condition. Buyer shall pay for any repairs designated by a lender"); *Fletcher v. Edwards*, 26 S.W.3d 66, 75 (Tex. App.—Waco 2000, pet. denied) (construing "in its present condition" in earnest money contract to be an agreement to purchase the property "as is"); *Smith v. Levine*, 911 S.W.2d

7

427, 431 (Tex. App.—San Antonio 1995, writ denied) (construing "in its present condition" to be an agreement to purchase the property "as is"); *see also Sims v. Century 21 Capital Team, Inc.*, No. 03-05-00461-CV, 2006 WL 2589358, at *2 (Tex. App.—Austin Sept. 8, 2006, no pet.) (mem. op.) (construing "in its current condition" as the plain-English equivalent to "as is").

A valid "as is" agreement prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). When considering the enforceability of an "as is" clause, courts should consider the totality of the circumstances, including (1) the sophistication of the parties and whether they were represented by counsel, (2) whether the contract was an arm's length transaction, (3) the relative bargaining power of the parties and whether the contractual language was freely negotiated, and (4) whether that language was an important part of the parties' bargain as opposed to being a "boilerplate" provision. *Id.* at 162.

In this case, both parties were represented by real estate agents. Additionally, although the Volmiches are German citizens, Mr. Volmich had worked as a project manager for wind farms in both Idaho and Texas before deciding to purchase a home in Wichita Falls. Neither party was represented by counsel, but the circumstances do not suggest any disparity of bargaining power that would affect the enforceability of the "as is" clause. Indeed, although the "as is" language was contained within the standard TREC contract form, the parties

8

negotiated that specific part of the sales contract by adding that the Neimans would pay to have the property treated for termites if the inspection revealed the need for such a treatment.  The parties had also previously negotiated to extend the initial ten-day termination period for an additional three days.  The totality of the circumstances therefore leads us to conclude that the "as is" clause in this contract is enforceable as an arm's length transaction between parties with equal bargaining strength.  *See Larsen*, 41 S.W.3d at 252.

Although the clause is enforceable standing alone, the Volmiches are not bound by the "as is" clause if they were induced into the contract because of a fraudulent representation or concealment of information by the Neimans.  *See Prudential*, 896 S.W.2d at 162.  A party claiming fraud in the inducement must demonstrate that: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant (a) knew the representation was false; or (b) made the representation recklessly, as a positive assertion with the intent that the plaintiff act on it; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.  *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) (op. on reh'g).

The summary judgment evidence establishes that the Neimans executed the Seller's Disclosure Notice on February 11, 2005, and that they indicated on the form that they were not aware of any roof defects or malfunctions.  The

9

summary judgment evidence also establishes that the Volmiches and the Neimans had no direct communication or contact prior to the closing. Further, Mr. Volmich testified that he reviewed the inspection report prior to the closing and prior to the expiration of the termination period. Mr. Volmich asserted in his deposition that he had observed the section of the roof that had been identified in the inspection report as having been repaired but that the leak at issue in this case was in a different section of the roof.

Also in the summary judgment record is deposition testimony by two witnesses, Derek Ellis and Jeffrey Garey, who testified that they had once observed Mrs. Neiman cleaning water from the floor of the home in October or November 2005, several months after the Neimans had moved out of the home in May 2005. Garey testified that he mowed the Neimans' yard during the six-month period before the property sold in February 2006. He testified that he saw Mrs. Neiman at the house cleaning water from the hardwood floor in the area between the den and the living room after it had rained in October or November 2005. He testified that that was the only time he saw water on the floor of the house prior to the sale of the home.[3] Garey further testified that, on that same occasion, Mrs. Neiman asked him to make sure that the leaves did not build up on the awning over the deck because it created a dam that would back up and

[3]Garey also testified that he continued to provide lawn care for the Volmiches after they had purchased the home and that he had, after the Volmiches had purchased the home, observed buckets and "kiddie pools" in the home in the area between the living room and the den to catch water after it had rained.

cause water to leak inside the home.[4]  Lastly, there is evidence that a note from Mrs. Neiman was delivered to the Volmiches after closing.  The note states in relevant part, "F.Y.I.–Make sure to keep roof of awning over deck clean of tree debris.  The live oak tree constantly drops old leaves [and] they will collect [and] can cause water to leak indoors."

Based on this summary judgment evidence, the Volmiches argue that they are not bound by their agreement to purchase the property "as is" because the Neimans induced them to make the agreement by concealing the roof defects. The Neimans respond that they did not make any false representations, that the Volmiches were fully aware of the home's condition at the time of the purchase because they obtained their own inspection, and that the inspection disclosed the problems of which the Volmiches now complain.  The Neimans argue that if a party obtains his or her own inspection, and if that inspection discloses the nature and extent of the problems later complained about, the inspection provides the basis for the purchase and supersedes any alleged wrongdoing on the seller's part as a matter of law.

The Volmiches' fraudulent inducement claim requires a showing of reliance.  *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990). Texas courts have held that when false and fraudulent representations are made concerning the subject matter of a contract but when the person to whom they

_____

[4]Ellis corroborated this testimony.

are made conducts an independent investigation into the matters covered by the representations before closing, it is presumed that reliance is placed on the information acquired by such investigation and not on the representations made to him and that he therefore cannot seek relief because the bargain later proves unsatisfactory. *Marcus v. Kinabrew*, 438 S.W.2d 431, 432 (Tex. Civ. App.—Tyler 1969, no writ); *see also Kolb v. Tex. Emprs' Ins. Ass'n*, 585 S.W.2d 870, 872 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *Lone Star Mach. Corp. v. Frankel*, 564 S.W.2d 135, 138 (Tex. Civ. App.—Beaumont 1978, no writ); *M.L. Mayfield Petroleum Corp. v. Kelly*, 450 S.W.2d 104, 109–10 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.). "The common thread of the decisions reaching this conclusion is that, regardless of the result of his investigation, the buyer's decision to undertake such an investigation indicates that he or she is not relying on the seller's representations about the property." *Bartlett v. Schmidt,* 33 S.W.3d 35, 38 (Tex. App.—Corpus Christi 2000, pet. denied).

Similarly, the Volmiches' DTPA claim requires proof of producing cause. *See Prudential*, 896 S.W.2d at 161 ("For DTPA violations, only producing cause must be shown.") (citing Tex. Bus. & Com. Code Ann. § 17.50(a)). Producing cause under the DTPA "requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred." *Id.* (citing *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980)). Texas courts have held that if a defendant can demonstrate that a new and independent basis for the plaintiff's cause of action exists, that proof may negate

12

that the defendant's acts were the producing cause of the plaintiff's injury. *Bartlett*, 33 S.W.3d at 39; *Dubow v. Dragon*, 746 S.W.2d 857, 860 (Tex. App.—Dallas 1988, no writ). Reliance on external assessments of the feasibility of purchasing land has been held to introduce a new and independent cause of the buyer's damages in several DTPA cases, thus negating the producing cause element of a DTPA claim. *Bartlett*, 33 S.W.3d at 40; *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 313 (Tex. App.—Fort Worth 1993, no writ); *Dubow*, 746 S.W.2d at 860.

This court has previously considered a similar case and held that an independent inspection precluded fraud and DTPA claims as a matter of law. *See Camden*, 870 S.W.2d at 311, 313. In *Camden*, the summary judgment evidence revealed that Camden sought to purchase a building from appellee Cascade Company and agreed to take the property "as is." *Id.* at 307. Camden obtained an appraisal that revealed a crack in the concrete slab. *Id.* at 307–08. Camden viewed the crack shortly after receiving the appraisal and also noticed a two-inch crack that ran the length of the building. *Id.* at 308. Camden contacted the seller who represented that the crack was purely cosmetic, that the crack had been previously inspected by an engineer, and that the crack was from settling. *Id.* Camden then had contractors and a facilities engineer inspect the crack, and received bids to repair the crack. *Id.* After Camden unsuccessfully attempted to negotiate a price reduction, the parties closed on the property. *Id.* Shortly after

13

closing, the seller sent a letter to Camden disclosing that the foundation had been repaired six years earlier. *Id.* at 308–09.

Camden filed suit under the DTPA and for fraud, and the trial court granted summary judgment for the seller. *Id.* at 309. Addressing Camden's fraud claim, this court held that when a person makes his own investigation into the facts and knows the representations to be false, he cannot, as a matter of law, be said to have relied upon the misrepresentations of another. *Id.* at 311 (citing *Laughlin v. Fed. Deposit Ins. Corp.*, 657 S.W.2d 477, 483 (Tex. App.—Tyler 1983, no writ)). This court applied similar reasoning to the producing cause element of Camden's DTPA claim and held that representations of another are not the producing cause of the injury when the buyer conducts his own investigation prior to purchasing property. *Id.* at 312–13.

The Dallas Court of Appeals similarly held that, as a matter of law, a buyer's inspection of a house's condition constituted a new and independent basis for the purchase of the property, which intervened and superseded the seller's alleged wrongful act. *Dubow*, 746 S.W.2d at 860. In *Dubow*, the appellants sought to purchase a home from the appellees. *Id.* at 858. The appellants obtained an inspection report that revealed several problems with the home, they confronted the sellers, and the sellers assured them that the home was a good home with no problems. *Id.* at 858–59. The parties then renegotiated and modified the contract. *Id.* at 859. The appellants subsequently sued the sellers, and the court's producing cause inquiry focused on whether the

14

sellers' statements about the home were the producing cause of the buyers' damages or whether the buyers' reliance on their own inspection of the home's condition constituted a new and independent basis for the purchase. *Id.* at 860. The court determined that the buyers' reliance on the professional opinions expressed as part of the inspection was the sole cause of their actual damages. *Id.*

Here, the Neimans met their traditional summary judgment burden by presenting evidence that they had no knowledge of any roof leaks, that the Volmiches obtained and reviewed an inspection of the home before purchasing the home, and that the sales contract contained an "as is" clause. That evidence conclusively proved the Neimans' entitlement to summary judgment on the Volmiches' fraudulent inducement and DTPA claims. *See Camden*, 870 S.W.2d at 311, 313; *Dubow*, 746 S.W.2d at 860; *see also Bartlett*, 33 S.W.3d at 38–39.

Because the Neimans met their summary judgment burden, the summary judgment burden then shifted to the Volmiches to present evidence raising fact issues. *See Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999) ("Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a fact issue.") (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). But there are at least two deficiencies in the Volmiches' summary judgment evidence. First, the Volmiches have no evidence that the Neimans knew of the alleged roof leak when they completed the Seller's Disclosure Notice in February 2005, meaning that there is no evidence that the

15

Neimans knowingly or recklessly made a false statement or failed to disclose the existence of a roof leak when they completed the disclosure notice and that the Volmiches did not contradict the Neimans' evidence that they did not make a false statement or fail to disclose a roof leak. But even if the evidence of the alleged roof leak in the fall of 2005—several months after the Neimans had moved away from the home and even longer after the Neimans had completed the disclosure notice—is evidence of a misrepresentation or failure to disclose, the independent inspection the Volmiches commissioned and reviewed before deciding to purchase the home supersedes, under the facts of this case, any alleged misrepresentation or failure to disclose by the Neimans. The inspection revealed numerous existing or past problems with the home, including previous roof repairs, leaks, and moisture damage and moisture-related deterioration throughout the house.

On this record, we are constrained to hold that the trial court did not err by granting the Neimans' traditional motion for summary judgment. While the Neimans, according to the summary judgment record, allegedly knew of the roof leak at issue during the fall of 2005, the summary judgment evidence does not present a genuine issue of material fact as to whether the Neimans knew of the leak at the time they completed the Seller's Disclosure Notice in February 2005, and the Volmiches do not argue that the Neimans had a duty to amend the disclosure statement once they allegedly became aware of the leak in the fall of

16

2005.[5] Nor have the Volmiches, in the face of the Neimans' summary judgment evidence, shown that fact issues exist as to whether they should not be bound by their contractual agreement to purchase the house "as-is" in light of their own independent inspection of the property.

We do not hold that an independent inspection will always bar DTPA and fraudulent inducement claims. Rather, we hold only that, under the facts and circumstances of this case, the Neimans met their traditional summary judgment burden, and the Volmiches did not meet their burden of presenting evidence to create genuine issues of material fact on each element of their fraudulent inducement and DTPA claims or on an element of the Neimans' affirmative defenses. We therefore hold that the trial court did not err by granting the Neimans' traditional motion for summary judgment, and we overrule each of the Volmiches' issues.

---

[5]Because the issue of a duty to amend the disclosure notice is not raised in the summary judgment motion, the summary judgment response, or the parties' briefs on appeal, we express no opinion on the matter.

17

## V. Conclusion

Having overruled each of the Volmiches' two issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

DELIVERED:  March 14, 2013